# Ryder *v.* Jacobs.

*Partnership—Participation in profits—Evidence—Question for jury.*

In an action of assumpsit to recover salary for services rendered as a salesman, where the defendant testifies that the plaintiff was to receive as compensation half the profits instead of a salary, and there was other evidence such as the conduct of the plaintiff in the business, the authority he exercised over it, and his alleged declarations to third persons, that he was a partner, the question as to whether there was a partnership is for the jury.

The mere agreement to give the plaintiff half the profits, for his services did not of itself constitute him as between the parties to the agreement a partner.

*Practice—Trial—Cross-examination.*

The Supreme Court will not reverse a judgment on the ground of a " nagging " cross-examination, unless it plainly appears that the trial court neglected to exercise properly its power to control the cross-examination.

*Evidence—Books and accounts.*

Where it is established that both plaintiff and defendant had access to, control over and the right to make entries in the books of the business; that the handwriting of both is intermingled on the same day on the same page; that each drew checks, and made memoranda on the stubs, the defendant may produce the books in evidence showing his own entries, it being a probable if not a necessary inference, that the plaintiff saw the entries about the time they were made, yet did not protest against them.

*Partnership—Evidence—Making affidavit of defense.*

In an action of assumpsit for salary alleged to be due to the plaintiff as a traveling salesman, where the defense is that the plaintiff was to receive in lieu of salary one half of the profits and where there is other evidence of a partnership existing between the plaintiff and the defendant, the court commits no error in overruling an offer of the plaintiff to prove by the defendant that the latter after the severance of their business relations had been sued as an individual and had made an affidavit of defense individually. In such a case the defendant had the option either to file a plea in abatement averring a partnership or to make an affidavit of defense to the merits.

Argued May 14, 1900. Appeal, No. 232, Jan. T., 1899, by plaintiff, from judgment of C. P. Lancaster Co., May T., 1894, No. 57, on verdict for defendant in case of Louis E. Ryder v. William M. Jacobs. Before GREEN, C. J., McCOLLUM, MITCH-ELL, DEAN and MESTREZAT, JJ. Affirmed.

Assumpsit for services as salesman. Before LIVINGSTON, P. J.

The facts appear by the charge of the court, and by the report of the case in 182 Pa. 624.

The court charged as follows:

This is an action brought by Louis E. Ryder, plaintiff, against William M. Jacobs, defendant. It is brought to recover from Mr. Jacobs the sum of $2,606.14, with interest thereon from April 7, 1894.

This sum, Mr. Ryder claims, was made up in this way: He

says that he was hired and employed by Mr. Jacobs as a salesman to sell cigars for him at the rate of $200 per month and traveling expenses, payable monthly; that he agreed to take $200 a month and traveling expenses from Mr. Jacobs for his services, and Mr. Jacobs agreed to pay him such sum for his services; that in pursuance of said contract, he entered and was in the employment of Mr. Jacobs as a salesman from January 18, 1893, to about April 7, 1894, and earned under that contract, which was a verbal one and not in writing, $2,926.54; that on account of this amount of wages earned by him he received payments from Mr. Jacobs as I have them taken down, I believe, I am correct, as follows:

February 22, 1893, $200; April 20, 1893, $200; May 22, 1893, $200; June 22, 1893, $200; July 23, 1893, $200; October 30, 1893, $300; November 29, 1893, $100; January 8, 1894, $350; February 26, 1894, $141; March 15, 1894, $109. And there was a credit for merchandise of $20.40, making a total credit of $2,220.40.

This amount, he says, he received on account of services as salesman under the contract he made with Mr. Jacobs.

The total amount for services was $2,926.54, and the payments of $2,220.40 deducted, leaves a balance which he claims due as wages of $706.14.

He further claims to have loaned Mr. Jacobs in advance, as he says, $1,900. This added, would make $2,606.14, being the amount which, he claims, is due him here in this suit, with interest from the time he states, April 7, 1894. And he has presented testimony to you for the purpose of showing that he is entitled to recover this amount from Jacobs in this action.

Mr. Jacobs admits that Ryder was in his employ as salesman from January, 1893, to about May 1, 1893, at a salary of $200 per month and traveling expenses, and no longer than that time, and that he paid Ryder in full for such services, and owes him nothing for or on account of services as salesman: but that their agreement was, that Ryder should be employed as salesman at $200 per month ended on May 1, 1893, as they originally agreed it should, when they moved into the new building, which Mr. Jacobs now occupies. And from that time forward, it was agreed between them verbally, not in writing, that Mr. Ryder should receive for his services the half of the

net profit of the business of making and selling cigars, in which Mr. Jacobs was at that time engaged in this city.

My recollection is (you will remember it), that Mr. Jacobs said he was to receive for his services half of the net profits, after deducting six per cent interest upon the amount of the capital which he had invested.

Mr. Jacobs denies having borrowed $1,900 from Mr. Ryder, as Mr. Ryder testifies he did, so that the case is presented by Mr. Jacobs differently from its presentation by Mr. Ryder.

He tells you that the contract was that Ryder was to receive $200 per month and traveling expenses as salesman until the time they would move into the new building, which Mr. Jacobs now occupies and in which he conducts his business, when his payment of $200 per month and traveling expenses was to cease, and from that time Mr. Ryder was to receive one half of the net profits of the business for his services, after deducting six per cent interest on the capital invested by Mr. Jacobs in the business (he was to be a partner in the profits of the business) and that Ryder has been paid all the money due him for services at $200 per month and traveling expenses up to the time they moved into the new building, and he became a partner in the profits of the concern, and that he owes him nothing now as profits.

His having stated they were to be partners makes it necessary for me now to inform you what is required with reference to partnership.

It is said to be a contract or agreement in which every partner is entitled and bound to take part in the conduct of the business, unless it was otherwise agreed between them. Every partner is liable for the debts of the partnership to the total extent of his property as between partners ; each partner is bound to contribute to the debts in proportion to his share of the profits. As regards third persons the act of every partner within the ordinary scope of his business binds his copartner, whether they have sanctioned it or not.

A partnership is a contract relation, and without a contract it cannot be very well made. It is not made in law of itself. A contract relation subsisting between persons who have combined their property, labor or skill in an enterprise or business as members for the purpose of joint profit. The partnership

relation does not arise from the mere operation of law, but can be created only by a voluntary act or contract, expressed or implied from their acts, by the parties entering into it, and mutual agency and a communion of profit and loss is its true criterion, each member standing in the relation of principal to the other, who in that regard are agents. In general a community of interests and sharing of profits and losses; the existence of mutual relationship of principal and agent; an intention on the part of persons interested and united in the prosecution of a common enterprise to become and act as partners, are the proximate tests as to the existence of a partnership between them, what constitutes a partnership being a question of law for the court, while the question as to the existence of the constituent elements of a partnership is one of fact for the jury.

Compensation for services in the form of commission or profits creates no such interest in the concern as constitutes a partnership.

If Mr. Ryder and Mr. Jacobs made or entered into an agreement between them, that Mr. Ryder should give his attention and services to Mr. Jacobs in the business he was then carrying on and conducting, as salesman, and for such services, without contributing any capital, as his compensation Mr. Jacobs was to allow him and pay him one half of the profits of the business, after deducting six per cent interest on the capital he had invested in the business, such an agreement would not constitute a partnership between them, would not make them partners. The Supreme Court of Pennsylvania has for three quarters of a century uniformly held compensation for services to be paid out of and contingent on profits does not of itself constitute an employee a partner. So much then for partnership.

If the jury in this case believe from the whole evidence that the contract between Mr. Ryder, the plaintiff, and Mr. Jacobs, the defendant, was that Ryder was to receive as salary as salesman $200 per month and traveling expenses from January, 1893, until the time he left, and that the contract was not that he was at any time to receive part of the profits or was not changed so he was to receive part of the profits, or as Jacobs called it, become a partner in the profits, he would be entitled to recover in this action the amount he claims with interest, the amount shown to be due him by the evidence with interest. So if the

contract was as Ryder says it was, from the time he went into the service of Mr. Jacobs until the time he ceased to serve him, was to be $200 per month with traveling expenses, and that was never changed during that time, or was not in the commencement but for a certain time, and after the time he moved into the new building, he was to receive a share of the profits in place of $200 per month as compensation for his services ; if it remained as Ryder says it was during the whole time, then he would be entitled to receive whatever amount was due him, whatever balance was found to be due him by the evidence, as services at $200 per month with traveling expenses, during the time he remained there.

[But if, as Mr. Jacobs says, the original contract was he was to have $200 per month until they removed into the new building, and that was then to cease, and he was to become from that time forward, while he remained a partner in the profits, he was to receive half of the net profits after deducting the interest on the capital at six per cent, as he stated, if it was changed to that, then from the time he went into the new building he would only be entitled to recover one half of the profits, and that he could not do in this action.   He would have to go into a court of equity.   This court could not decide that, nor this jury decide it for him.   In such case you would have to find a verdict in favor of the defendant, and if there be anything due then to Mr. Ryder he would have to go into a court of equity, or into another court and have his case decided.   He could not have it decided here.]  [2]

[So that if the jury believe from all the evidence that Mr. Jacobs after they moved into the new building was to pay Mr. Ryder half of the profits, net profits, after deducting the interest spoken of, and not $200 per month, as Mr. Ryder says, for his services, in that case there can be no recovery in this action by Mr. Ryder, your verdict would have to be for the defendant, Mr. Jacobs, and Mr. Ryder if anything is owing to him on account of services by reason of the defendant failing to pay him the half of the profits, to which he says he is entitled, he would have to go into another court to recover that. It cannot be done before this court and jury.]  [3]

I do not know that I need say anything further to you in regard to the matter.   I have explained now everything to you.

There are three points in the case, two really. One is, if Mr. Ryder is correct in his evidence as to the bargain, that it was to be from the commencement to the end at $200 per month and traveling expenses, and he has not been fully paid, he would be entitled to be paid whatever balance there was due him, in this action.

[But if he is not correct, and Mr. Jacobs is correct in his statement that the contract when originally made was to last until the parties moved into the new building, in which Mr. Jacobs is now carrying on his business; until they moved there it was to be $200 per month, as Mr. Ryder has said; but when they moved there that ceased and Mr. Jacobs was to pay Mr. Ryder in lieu thereof for his services half of the net profits, after deducting six per cent interest on the amount of the capital which Mr. Jacobs had invested in the business, then Mr. Ryder could not recover anything in this action, as I have told you; and if anything be due him on account of these services on his share of the profits he will have to go into another court to recover that.] [4]

Plaintiff's point was as follows:

Under the undisputed evidence and the pleadings in the case no partnership inter sese (that is between themselves) existed between the plaintiff and defendant. *Answer:* Our answer to that is, we have fully explained the law to the jury as to what constitutes a partnership and what is required in law to establish a partnership generally and inter sese; but the question as to the existence of the constituent elements of a partnership is a question of fact for the jury, and we leave that question with them. [1]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1–4) above instructions, quoting them.

*B. F. Davis*, with him *George Nauman*, for appellant.— Where two persons agree simply to share the profits of a trade or adventure, they will be partners in those profits; but if one be a mere servant or agent of the other and receive his share of the profits in lieu of wages, then as there is no mutuality between the parties they are not partners: Dunham v. Rogers,

1 Pa. 255; Edwards v. Tracy, 62 Pa. 374; Heckert v. Fegely, 6 W. & S. 139; Irwin v. Bidwell, 72 Pa. 244; Collyer on Partnership, secs. 25, 26, 27, 29; Gill v. Kuhn, 6 S. & R. 333; Gibbs's Est., 157 Pa. 70; Everitt v. Chapman, 6 Conn. 347; Dwindle v. Stone, 30 Maine, 386.

The books should not have been admitted: Mueller's Est., 159 Pa. 590; Cooper v. Morril, 4 Yeates, 341.

*John E. Malone*, with him *W. U. Hensel*, for appellee.

OPINION BY MR. JUSTICE DEAN, May 29, 1900:

This case was here before on appeal by defendant, see 182 Pa. 624, and was reversed because of misdirection by the court on the question of the effect on the issue of a partnership, if proven. It is not necessary to here repeat the facts as stated on that appeal; the case in the court below was then made to turn on the fact of partnership, and no significance was given to the evidence on part of defendant by the court that even if there was no partnership, there was evidence that plaintiff was to be paid solely out of profits; therefore, his right to recover depended on whether there were any profits during the term of his employment, and if so, what amount. The case went back for retrial, and was tried in accordance with our opinion as to the proper effect to be given to the fact of a partnership, if one existed; the verdict was for defendant, and we now have this appeal by plaintiff who assigns to rulings on offers of evidence and charge of the court, twenty-two errors.

The principal error assigned, and the one on which most stress is laid by appellant, is the first. The court correctly defined a partnership, and what facts in law were necessary to constitute it, and then said: "But the question as to the existence of the constituent elements of a partnership is a question of fact for the jury, and we leave that question with them." It is argued, that on the evidence, this instruction was misleading, as the defendant himself testified there was no partnership. We think the learned counsel for appellant is not exact in his statement of the fact; defendant testified positively, that plaintiff, for his services, was to receive as compensation half the profits and that he was a partner in the profits. The mere agreement to give Ryder half the profits for his services, did

not, of itself, constitute him a partner as between themselves, but there was other evidence, such as the conduct of Ryder in the business, the authority he exercised over it, and his alleged declarations to third persons, that he was a partner, which effectually prevented the court from deciding as a question of law, that there was no partnership. The conflicting evidence, and different inferences that might be drawn therefrom, necessarily put the case before the jury. The many authorities cited by appellant are all to the point, that the mere receipt of a share of the profits, without more, does not establish a partnership. This, the learned judge of the court below distinctly announced to the jury as the law; at the same time, he instructed them, that if the agreement was that after they went into the new building, Ryder was to be a partner and was to receive one half the net profits, after deducting all expenses, including interest on capital, then he could recover only one half the profits, and that he would have to sue for in equity by a bill for an accounting. There was no error in this instruction; the court was bound by the evidence before it to so instruct the jury. The first assignment is overruled.

The second, third and fourth assignments complain that in its charge, the court made the whole case to turn on plaintiff's claim for services, leaving out of view his evidence tending to prove that he had loaned defendant $1,900. The charge itself negatives this assignment; the court after stating that plaintiff claimed to recover $1,900 as a loan, and that he had presented testimony tending to establish the fact, further calls their attention to Jacobs's testimony, positively denying that such loan was made. This left the credibility of the two witnesses to be judged of by the jury, and that was as far as the court could go.

The fifth assignment alleges that in answer to defendant's fourth point, the court assumed as a fact, that which was not a fact. This allegation is not sustained by the record. The point asked the court to say to the jury, that if a remittance of $1,000 by Ryder to Jacobs, was not a loan but to make good an overdrawn account, there could be no recovery for this item. The court affirmed the point, but no fact was assumed; if the jury found the fact, which was all the point requested, then they should not allow plaintiff credit for the $1,000. The an-

swer was correct.   The sixth assignment, in substance, raises the same question as the fifth, and is also overruled.

The seventh and eighth assignments complain of "nagging" plaintiff on the witness stand, whatever that may mean, by defendant's counsel on cross-examination.   Undoubtedly, counsel may, and perhaps too often do, exceed the bounds of courtesy and orderly examination; this, however, is always controllable by the trial court, and unless it plainly appeared, that the court in a proper case neglected to exercise its power, we would not convict of error.   A careful inspection of the reported testimony fails to convince us that counsel went beyond the proper limits of cross-examination in this instance.   These assignments are overruled.

The ninth to the twentieth assignments, inclusive, complain that defendant was permitted to put before the jury his own entries in books and accounts, which entries were highly prejudicial to plaintiff.   Generally such evidence is not admissible; but take the facts before the court at the trial; it was established that both plaintiff and defendant had access to, control over, and the right to make entries in them; that the handwriting of both is intermingled on the same day on the same page; that each drew checks, and made memoranda on the stubs.   Jacobs had made entries of payments as salary to Ryder; it followed, as a probable inference, if not a necessary one, that Ryder saw these entries about the time they were made, yet did not protest against them; if they were not correct, he should have objected; his silence, until after their business relations were severed, was some evidence that they were correct.   In this view, the entries in the books were evidence for the consideration of the jury.   All these assignments are overruled.

The twenty-first assignment complains that plaintiffs offer to prove by defendant, that the latter, after the severance of his business relations with plaintiff, had been sued as an individual, and had made an affidavit of defense individually was overruled.   We do not see the relevancy of the fact; defendant might have filed a plea in abatement to such suit, averring a partnership liability with Ryder when the alleged debt was contracted, or he might choose to treat himself as the plaintiff in the suit treated as individually liable and make his affidavit

to the merits. It was, a matter of option with him, and neither made for nor against him in this issue.

The twenty-second assignment is not pressed.

On the whole case we detect no error which calls for a reversal, and the judgment is therefore affirmed.