**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2626
_____

EILEEN SHEIL,
                                    Appellant

v.

REGAL ENTERTAINMENT GROUP
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-12-cv-01390)
District Judge:  Honorable J. William Ditter

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 17, 2014

Before:  CHAGARES, GREENAWAY, JR., and VANASKIE, Circuit Judges.

(Filed: April 15, 2014)
_____

OPINION
_____

CHAGARES, Circuit Judge.

	Plaintiff Eileen Sheil appeals the District Court's May 20, 2013 decision granting

defendant Regal Entertainment Group ("Regal")'s motion for summary judgment.  For

the reasons that follow, we will vacate the District Court's grant of summary judgment

and remand the case to the District Court.

We write solely for the parties and therefore recite only the facts that are necessary to our disposition. On August 21, 2011, Sheil and her sister, Brigid Smyth, went to see a movie at the Regal movie theater, to which they had been many times. After the movie, they entered the ladies' restroom. As Sheil entered and approached the sink area, she felt her shoe and cane slip out from under her and she fell to the floor. Sheil did not see what caused her to fall, but she believes it was water on the floor, because after she fell there was a wet area on the buttocks of her pants about the size of her hand. At the time of the fall, Sheil told Smyth that her pants were wet. Sheil also testified that when she entered the bathroom, there was at least one person at the sink.

Regal's associate manager, Henri Scott, responded to the accident and prepared an incident report. The report indicates that Sheil stated that she fell when her cane hit a spot of water on the floor. Witnesses reported hearing a disposal box fall and then seeing Sheil fall. Sheil was taken to the hospital by ambulance. The report also indicates that there was no water on the floor when Scott inspected the bathroom.

Sheil described the bathroom as having a tiled floor with sinks and three bathroom stalls on the left side of the room. Hand dryers were located on the right wall, approximately six feet past the sinks. There was a mat on the floor beneath the hand dryers, but no mat in front of the sinks. There was no wet floor sign in the bathroom. On prior visits to the Regal movie theater, both sisters had used the theater's bathrooms and observed drips of water on the floor, although neither reported ever having fallen because of the water on the floor prior to the incident at issue.

Scott testified that the bathrooms were generally busiest when movies were letting in and out. He stated that he was aware that water would splash on the floor from the sink from time to time. Scott also testified that Regal's inspection policy requires that each bathroom be inspected each half hour, and he did not know when the bathroom had been last inspected prior to this incident. Robert Mayberry, another Regal associate manager, testified, consistent with Scott's testimony, that water from people washing their hands would get on the floor from time to time, and that when this occurred, he would see droplets of water the size of quarters on the floor by the sinks. Mayberry also testified that every time he checked the sink area he would see droplets of water on the floor.

On February 17, 2012, Sheil filed suit in the Pennsylvania Court of Common Pleas against Regal seeking damages for injuries arising from her fall. She alleged that Regal had a duty to maintain the restroom in a reasonably safe condition and negligently failed to do so. Regal removed the case to the District Court for the Eastern District of Pennsylvania on March 19, 2012. On November 2, 2012, Regal moved for summary judgment on Ms. Sheil's claim. The District Court granted Regal's motion on May 20, 2013. The District Court found that Sheil had adduced sufficient evidence to raise a genuine dispute of material fact as to whether she fell because of water on the floor,[1] but also found that she failed to produce any evidence demonstrating that Regal had actual or constructive notice of the water on the floor, and therefore concluded, as a matter of law, that Regal was not negligent. Ms. Sheil timely appealed that decision, arguing that the

_____

[1] Neither party challenges this finding.

3

District Court erred in failing to infer actual notice from the fact that water on the floor in front of the sinks was a frequent occurrence.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

"We review the District Court's disposition of a summary judgment motion *de novo*, applying the same standard as the District Court." Doe v. Luzerne Cnty., 660 F.3d 169, 174 (3d Cir. 2011) (citations omitted). The District Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute or issue "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). We will view the record in the light most favorable to the non-moving party. Id.

## III.

There is no dispute that Pennsylvania law governs plaintiff's claims. In Pennsylvania, the "mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence." Swift v. Ne. Hosp. of Phila., 690 A.2d 719, 722 (Pa. Super. Ct. 1997). To establish a negligence claim, a plaintiff must prove "four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual

4

damages." Id.  Under § 343 of the Restatement (Second) of Torts, which in Pennsylvania defines the duty that a possessor of property owes to a business invitee,[2] a store owner is liable only for injuries to a patron caused by a dangerous condition on the premises if he "knows of or reasonably should have known of the condition." Id. (quotation omitted). Therefore, an "invitee must prove either the [defendant] had a hand in creating the harmful condition, or [it] had actual or constructive notice of such condition." Id.  A business owner has actual notice if he knows of the condition or "the condition is one which the owner knows has frequently recurred." Moultrey v. Great Atl. & Pac. Tea Co., 422 A.2d 593, 596 (Pa. Super. Ct. 1980).  To establish constructive notice, a plaintiff must demonstrate that "the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it." Id.

In the instant case, the District Court granted summary judgment to Regal based on its finding that Sheil did not demonstrate that Regal had actual or constructive notice of the water on the floor.  The District Court first noted that there was "no allegation that Regal caused the water to be on the bathroom floor or that it had actual notice that there was water on the floor prior to this incident." Appendix ("App.") 4.  The District Court then evaluated Sheil's claim under a theory of constructive notice, and found that the claim failed because "[t]o establish constructive notice in a premises liability case, there must be proof that the condition had been present long enough that, in the exercise of reasonable care, the defendant would have known of its presence," and there was no evidence here that the spill had been on the floor for a significant duration of time. Id. at

_____

[2] The parties agree that Sheil was a business invitee at the Regal movie theater.

5

5 (citing cases). The District Court observed that "[i]n the absence of evidence of the duration of time a spill remained on the floor prior to an accident, courts have granted summary judgment and made clear that constructive notice cannot be inferred," and noted that Sheil "point[ed] to no evidence that could establish when this spill occurred." Id. at 5-6. The District Court also found that Sheil could not establish constructive notice based on Regal's maintenance policies, because "this evidence d[id] not establish when the floor got wet, the trigger which is necessary to start Regal's duty." Id. at 7. Accordingly, the District Court granted Regal's summary judgment motion.

The District Court's analysis regarding constructive notice was correct and thorough, and we do not take issue with it. However, the District Court acknowledged, but did not appear to consider, an alternative argument raised by Sheil: that actual notice of the dangerous condition can be inferred from the evidence demonstrating that the condition – water on the bathroom floor – occurred frequently. See id. at 4. This oversight is especially significant because, under Pennsylvania law, "where the condition is one which the owner knows has frequently recurred, the jury may properly find that the owner had actual notice of the condition, thereby obviating additional proof by the invitee that the owner had constructive notice of it." Moultrey, 422 A.2d at 596. Accordingly, if Sheil has offered enough evidence to raise a genuine dispute of material fact as to actual notice, this suffices to allow her claim to go forward, even if she has failed to establish constructive notice.

In Markman v. Fred P. Bell Stores Co., the Pennsylvania Supreme Court held that where a dangerous condition "was not a mere chance occurrence, but so often repeated as

6

to call for frequent notices to the owner . . . we cannot say the jury was not justified in finding defendant failed in his legal duty." 132 A. 178, 180 (Pa. 1926). In Markman, the plaintiff slipped on vegetable refuse and fell while walking out of a grocery store. Id. at 381. She sued for her injuries and the jury awarded her $3,500. Id. at 179. The defendant challenged the verdict, arguing that the plaintiff failed to meet her burden to prove negligence. Id. The court rejected this argument, observing that, although the "mere presence of [] refuse" at the store exit was insufficient to prove negligence, there was testimony that "celery, lettuce, and other plants were washed on the street at the right of the door, that parts became loose and accumulated on the pavement and step, and that this condition existed at the time of the accident." Id. at 180. The court found that the evidence reflected that this condition was so frequent as to call for "frequent notices to the owner, and on one occasion to the police, and the same situation was shown to have existed when the customer was hurt." Id. Accordingly, it held that it could not disturb the jury's finding that defendant breached his legal duty to keep the premises reasonably safe. Id.

Pennsylvania courts have repeatedly applied the analysis employed in Markman to infer actual notice from a frequently occurring dangerous condition. See, e.g., Morris v. Atl. & Pac. Tea Co., 121 A.2d 135, 137-38 (Pa. 1956) (holding that the "owner or custodian of a parking lot" received notice "every winter" that the weather might create dangerous, icy conditions in the lot, and, therefore, was on actual notice of a possibly dangerous condition for its patrons); Miller v. Peter J. Schmitt & Co., Inc., 592 A.2d 1324, 1333 (Pa. Super. Ct. 1991) (Wieand, J., concurring and dissenting) (stating that

7

"where the condition is one which the owner knows has frequently recurred, the jury may properly find that the owner had actual notice of the condition" (citing cases)). The analysis, however, is not limited to a determination of whether the dangerous condition was a frequent occurrence. Rather, Pennsylvania law requires that a plaintiff demonstrate (1) that the dangerous condition occurred frequently and (2) that plaintiff's injury was caused by the frequently recurring condition. See, e.g., Martino v. Great Atl. & Pac. Tea Co., 213 A.2d 608, 609-10 (Pa. 1965) (no actual notice in a case where a customer slipped on a grape and injured herself, because even though there was evidence that "grapes had fallen from the counter on numerous occasions," there was no evidence "as to the cause of the presence of the grape in the aisle"); Myers v. Penn Traffic Co., 606 A.2d 926, 929 (Pa. Super. Ct. 1992) (holding that, although evidence that "filling the produce cases makes a mess" indicated that the dangerous condition was a recurring one, there was no actual notice, because there was "nothing in the record to indicate that the produce cases had been filled near the time that appellant fell").

This framework has consistently been applied to analyze actual notice in negligence cases, and the District Court erred in failing to consider it with regard to the instant case. Accordingly, we will vacate the District Court's grant of summary judgment and remand to the District Court for a determination as to whether Sheil has demonstrated actual notice.

IV.

For the foregoing reasons, we will vacate the District Court's grant of summary judgment to Regal, and remand the case to the District Court.